IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| ALICIA PINO,           Plaintiff, | ) ) ) |
| vs. | ) )  No. 1:21-cv-639 |
| BBVA SECURITIES INC and BBVA USA,           Defendants. | ) ) ) ) |

**COMPLAINT FOR SEX DISCRIMINATION, SEXUAL HARASSMENT, AND RETALIATION**

Alicia Pino, by and through her attorney SaucedoChavez P.C. (Christopher T. Saucedo and Daniel Apodaca) bring claims against BBVA Securities, Inc, and BBVA USA (collectively "BBVA") for quid pro quo sex discrimination, sexual harassment, and retaliation.

**NATURE OF THE ACTION**

1. The Plaintiff, Alicia Pino, brings this action against BBVA for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") (42 U.S.C. § 2000e).

2. BBVA hired Ms. Pino on November 1, 2016 as a Work Place Solutions Officer. It is somewhat unclear which entity under the BBVA umbrella was Ms. Pino's formal employer as her employee handbook references both BBVA USA and BBVA Securities, Inc.

3. During her tenure at BBVA, Ms. Pino fulfilled numerous work performance metrics resulting in increased duties and responsibilities.

4. But BBVA also subjected her to continuous sexual harassment that created a hostile work environment and retaliated against her after complaints were made regarding the sexual harassment.

## PARTIES

5. Alicia Pino resides in Albuquerque, New Mexico and worked for BBVA primarily in Albuquerque, New Mexico.

6. BBVA Securities Inc. is a foreign corporation with corporate headquarters located in Delaware, and is registered to do business in New Mexico.

7. BBVA USA is a foreign corporation with corporate headquarters located in Alabama, and is not registered to do business in New Mexico.

8. BBVA maintains offices and does business in Albuquerque, New Mexico and has continuously had at least fifteen (15) employees in New Mexico.

9. BBVA's registered agent in New Mexico is CT Corporation System, 206 S. Coronado Avenue, Espanola, NM 87532.

10. BBVA has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

11. Ms. Pino seeks damages in excess of $75,000, exclusive of attorney fees.

## JURISDICTION AND VENUE

12. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

13. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Mexico

14. Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3), in that the unlawful employment practice was committed in New Mexico, in that the relevant employment records are

maintained in this district, in that BBVA has its principal office in this district, and there is no other district that has substantial connection to the claim.

## CONDITIONS PRECEDENT

15. On March 17, 2020, Alicia Pino timely filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

16. On August 5, 2020, due to delays relating to the COVID-19 pandemic, the EEOC sent Alicia the charge of discrimination to sign.

17. On May 4, 2021, the EEOC issued Alicia a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. Alicia has fully complied with all prerequisites to jurisdiction in this Court under Title VII.

## FACTS

18. Ms. Pino is a single mother of two children.

19. Ms. Pino began working for BBVA on November 1, 2016 as a Work Place Solutions Officer I and she reported to Kashif Pathan.

20. During her tenure, Ms. Pino surpassed monthly and yearly goals, led the district in numerous Workplace Solutions led activities, established brand marketing, and established name recognition for the New Mexico district.

21. BBVA recognized Ms. Pino's accomplishments by promoting her to Workplace Solutions Officer II in Feb 2017.

22. Due to the change in reporting structure of Workplace Solutions Officers, Ms. Pino was now under the supervision of a new manager, Rob Mangone. Mr. Mangone was now in complete control of Ms. Pino's meeting schedule, travel schedule, work load, time-off, evaluations, and opportunities for promotion.

23. In November 2017—after Mr. Mangone became Ms. Pino's manager—Rob started subjecting Ms. Pino to sexual advances and inappropriate touching.

24. He manipulated her work-related trips and her work calendar to change appointments/meetings with clients in order to have access to her. He even called clients to cancel appointments in order to make her free for his use.

25. Ms. Pino did not reject these advancements out of fear that it would have adverse consequences on her employment with BBVA, such as poor evaluations, decreased salary, or unfavorable assignments.

26. Ms. Pino understood that Mr. Mangone directly controlled her ability to support her children.

27. Mr. Mangone directly tied continued sexual encounters with career success at BBVA.

28. In May 2019, Mr. Mangone went on FMLA but continued to have contact with Ms. Pino and continued to manipulate her work schedule.

29. On June 26, 2019, Mr. Mangone requested that Ms. Pino meet him and a client to discuss work related business. The client never showed up and instead Mr. Mangone initiated a sexual encounter.

30. As a result, in July 2019, Ms. Pino followed BBVA's internal procedures and made an anonymous tip to the Ethics Point hotline regarding the continuous sexual harassment. Due to this, BBVA sent out a survey to employees requesting information on sexual harassment occurring in the workplace. However, after this, the internal complaint to the Ethics hotline went ignored and Mr. Mangone continued the unwelcomed sexual advances to Ms. Pino.

31. The harassing conduct and BBVA's failure to take appropriate actions to stop it caused Ms. Pino to suffer great emotional distress and adversely affected her working conditions.

32. In October 2019, Ms. Pino asked for and received FMLA leave for work-related PTSD relating to the harassing conduct.

33. Mr. Mangone continued harassing, unwelcomed behavior through 2019.

34. In January 2020—due to another employee reporting inappropriate conduct from Mr. Mangone towards Ms. Pino—BBVA's Human Resources Department requested that Ms. Pino disclose the sexual harassment she was experiencing in the workplace.

35. Immediately after that, Alicia was denied work-related communication and had no support from her new Manager, Steve Ortega.

36. Realizing that BBVA was punishing her for Mr. Mangone abusive behavior, Ms. Pino filed a Charge of Discrimination with the EEOC.

## COUNT ONE:

**DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
(42 U.S.C. §§ 2000E et al.)**

37. Ms. Pino incorporates paragraphs 1 through 35 as if fully set forth herein.

38. Ms. Pino is member of a protected class and identifies as a female.

39. Mr. Mangone—Ms. Pino's direct supervisor—controlled her work schedule including travel, work load, her requests for time off, and her evaluations.

40. Ms. Pino feared that if she rejected these advancements she would suffer employment actions that would directly affect her ability to financially support herself and her children.

41. Ms. Pino's fears were based upon Mr. Mangone's supervisory position, his words, and his actions.

42. Mr. Mangone's discrimination of Ms. Pino negatively impacted tangible aspects of her employment including compensation or other terms, conditions or privileges of employment.

43. Ms. Pino suffered damages as a result of BBVA's unlawful discriminatory actions, through its manager and supervisor Rob Mangone, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

44. BBVA, through Rob Mangone, intentionally violated Ms. Pino's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT TWO:

### SEXUAL HARRASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (42 .S.C. §§ 2000E et al.)

45. Ms. Pino incorporates paragraphs 1 through 43 as if fully set forth herein.

46. Ms. Pino is member of a protected class and identifies as a female.

47. Alicia Pino was subjected to continuous sexual advances and other unwelcomed, harassing activity by a manager that created a hostile work environment.

48. The harassment negatively impacted tangible aspects of her employment including compensation or other terms, conditions or privileges of employment.

49. Ms. Pino suffered damages as a result of BBVA's unlawful harassment, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

50. BBVA intentionally violated Ms. Pino's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT THREE:

**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(42 U.S.C. §§ 2000E et al.)**

51.  Ms. Pino incorporates paragraphs 1 through 49 as if fully set forth herein.

52.  In January 2020, Ms. Pino engaged in protected activity by complaining to BBVA's Human Resources Department about Mr. Mangone's discriminatory and harassing treatment of her based on her sex.

53.  Immediately after Ms. Pino complained of discrimination and sexual harassment, she was subjected to adverse employment actions.

54.  Ms. Pino suffered damages as a result of BBVA's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

55.  BBVA intentionally violated Ms. Pino's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## PRAYER FOR RELIEF

Wherefore, Ms. Pino respectfully requests that this Court:

A.  Order BBVA to make whole Alicia Pino by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

B.  Order BBVA to make whole Alicia Pino by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above, including but not limited to, pain and suffering, mental anguish, humiliation, embarrassment, emotional distress, anxiety, inconvenience, and loss of enjoyment of life, in amounts to be determined at trial.

C. Order BBVA to pay Alicia Pino punitive damages for its malicious conduct or reckless indifference described and referenced above, in amounts to be determined at trial.

D. Grant such further relief as the Court deems necessary and proper.

## JURY TRIAL DEMAND

Alicia Pino hereby demands a jury trial on all questions of fact raised by its Complaint pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

**SAUCEDOCHAVEZ, P.C.**

By: */s/ Christopher T. Saucedo*
Christopher T. Saucedo
800 Lomas Blvd. NW, Suite 200
Albuquerque, NM 87102
T: (505) 338-3945
E: csaucedo@saucedochavez.com

*Attorney for Alicia Pino*